IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CLEVELAND IMAGING and | § | Case No. 14-34974 |
| SURGICAL HOSPITAL L.L.C., | § | |
| | § | |
| DEBTOR | § | Chapter 11 |

**DEBTOR'S EMERGENCY MOTION FOR AN ORDER
PURSUANT TO SECTIONS 541, 542, AND/OR 543 OF THE
<u>BANKRUPTCY CODE REQUIRING TURNOVER OF ESTATE ASSETS</u>**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN <u>21 DAYS</u> OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EXPEDITED RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

THERE WILL BE A HEARING ON THIS MOTION ON AUGUST 28, 2015 AT 11:00 a.m. IN THE UNITED STATE COURTHOUSE, 515 RUSK, COURTROOM 600, HOUSTON, TEXAS 77002.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Cleveland Imaging and Surgical Hospital L.L.C., debtor and debtor-in-possession in the above-captioned case ("Debtor") hereby submits this Emergency Motion for an Order Pursuant to Sections 541, 542, and/or 543 of the Bankruptcy Code Requiring Turnover of Estate Assets ("Motion"). In support of the Motion, the Debtor respectfully represents as follows:

## I.
## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## BACKGROUND

**The Proposed Sale**

2. On June 12, 2015, the Debtor filed its Motion, Pursuant to Bankruptcy Code Sections 105(a); 363; and 365, and Bankruptcy Rules 2002, 6004, and 6006 for Entry of: (I) an Order: (A) Approving Auction and Bidding Procedures; (B) Scheduling Auction and Sale Hearing; (C) Approving the Form and Manner of Service of Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief; and (II) An Order: (A) Approving Purchase Agreement; (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (C) Approving Form and Manner of Service of Notice of Sale Hearing; and (D) Granting Related Relief [Docket No. 170] (the "Sale Motion"). Pursuant to the Sale Motion, the Debtor proposed to sell the Hospital. Attached to the Sale Motion was a proposed stalking horse bid by CISH Acquisition, LLC ("CISH")[1], in the form of an Asset Purchase Agreement pursuant to which CISH, in accordance with an

---

[1] CISH Acquisition is owned equally by three doctors: Dr. Moparty, Dr. Delaflor (each an equity owner of the Debtor), and Dr. Bansal.

agreement between CISH and LDF, offered to credit bid a portion of the Iberia Indebtedness in the amount of $4,561,474.99.

3. On June 23, 2015, the Court entered an order [Docket No. 178] approving the proposed bid procedures, designating CISH as the stalking horse bidder, and providing CISH with certain protections.

4. On July 6, 2015, prospective bidder Caliber Medical Partners II, LLC ("Caliber") filed its Motion to Reconsider the Bid Procedures Order [Docket No. 193] (the "Reconsideration Motion") seeking reconsideration of the bid procedures. Specifically, Caliber challenged the propriety of CISH serving as stalking horse bidder.

5. As a result of the Reconsideration Motion, the Bid Procedures were amended such that there was no longer a stalking horse bidder. The Court entered an order reflecting the revised Bid Procedures on July 15, 2015 [Docket No. 239] (the "Amended Bid Procedures Order").

6. CISH tendered a second offer to purchase the Hospital pursuant to an agreement between CISH and LDF. Pursuant to the terms of such offer, CISH proposed to buy the Hospital via a credit bid of a portion of the Iberia Indebtedness in the amount of $6,000,000.00, plus $500,000.00 in cash (the "CISH Credit Bid").

7. Prior to the hearing on the Reconsideration Motion, the Debtor determined that without substantially more DIP financing the Debtor would be unable to continue operations past July 17, 2015. The Debtor approached both CISH and Caliber regarding possible DIP financing solutions. As a result of these discussions, Caliber provided a Third DIP Loan, approved by order of the Court [Docket No. 241], to cover another week of payroll. The parties also agreed, with the approval of the Court, to pursue an expedited sale of the Hospital.

8. At a status conference on July 22, 2015, the Court set an auction and sale hearing for July 31, 2015.

9. Immediately prior to the Credit Bid Hearing, in an effort to keep the Hospital open and to preserve the value of the bankruptcy estate for the benefit of all creditors, the Receiver initiated discussions with the Parties[2] and reached an agreement for mutual resolution of various disputes.

10. As a result of the Receiver's efforts, Caliber agreed to purchase the Hospital for cash in the amount of $6,470,000 and other valuable consideration, such as the payment of certain real estate taxes owed by the bankruptcy estate (the "Sale"), subject to, among other things, the Court approving a release of Caliber by the bankruptcy estate.

11. In addition, CISH and LDF agreed to settle the Iberia Indebtedness at a substantial discount to the Debtor and the bankruptcy estate.

12. At the conclusion of the Sale Hearing on July 31, 2015, after taking evidence and considering the arguments of counsel, the Court approved the Sale to Caliber and entered an Agreed Order (A) (I) Approving Asset Purchase Agreement With Caliber Medical Partners II, LLC, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests to Caliber Medical Partners II, LLC, and (III) Granting Related Relief, and (B) Resolving Credit Bid Motions [Docket No. 311] (the "Sale Order") approving the Sale to Caliber pursuant to that Asset Purchase Agreement[3] (the "APA") by and between Caliber and the Debtor.

---

[2] As used herein the capitalized term Parties shall refer to the Debtor, its estate, the Receiver, Caliber, CISH, and LDF.

[3] The APA was filed with the Bankruptcy Court on August 3, 2015 [Docket No. 320].

4

13. Pursuant to that Amended Bid Procedures Order, on July 31, 2015, Caliber tendered a non-refundable deposit (the "Deposit") in the amount of $650,000 less the $42,000 Third DIP Loan.

**Caliber Fails to Close**

14. The APA provided for a Closing Date of August 10, 2015. On August 10, 2015, counsel for Caliber informed the Debtor that funding would be delayed by one day due to the scheduling of the hearing regarding the *Debtor's Emergency Motion Pursuant to Federal Bankruptcy Rule 9019 For An Order Authorizing And Approving Settlement* [Docket No. 321] (the "Compromise Motion"), approval of which was a condition to closing.[4] However, Caliber failed to fund the Purchase Price (as defined in the Sale Order) and the Sale did not close on August 11, 2015.

15. On August 11, 2015, the Debtor caused $330,000.00 of the Deposit to be wired to Chicago Title Insurance Company ("Chicago Title") to be held in escrow and applied toward the Purchase Price upon Closing.

16. On August 17, 2015, when Caliber still had not funded the Purchase Price or closed the Sale, the Debtor notified Caliber of its intent to terminate the APA unless Caliber tendered the full Purchase Price and closed the Sale by 4:00 p.m. C.D.T. on Tuesday, August 18, 2015.

17. On August 18, 2015, the Debtor and Caliber, as parties to the APA, and Lowry Donkey Farm, L.P. and CISH Acquisition, LLC, as consenting parties only, entered into a First Amendment to Asset Purchase Agreement, which amendment extended the deadline to close the Sale until August 19, 2015.

---

[4] The Court entered the *Order Granting Motion to Approve Compromise Under Rule 9019* [Docket No. 333] on August 10, 2015.

18. Caliber failed to fund the Purchase Price pursuant to the APA on August 19, 2015 and the Sale did not close. Accordingly, on August 20, 2015, the Debtor notified Caliber that as a result of Caliber's breach of the APA, the Debtor was exercising its right to terminate the APA immediately. The Debtor also filed its Notice of Termination of Asset Purchase Agreement [Docket No. 345].

**Chicago Title Fails to Turnover Estate Assets**

19. On August 20, 2015, Debtor's counsel notified Jason Hissong, the escrow officer responsible for this matter, of Caliber's breach and that the APA had been terminated. The Debtor requested that Chicago Title return the $330,000.00 portion of the Deposit to the Debtor and provided wiring instructions. A copy of the August 20 email is attached hereto as **Exhibit "A."**

20. On August 24, 2015, after being informed that Chicago Title was unwilling to return the $330,000.00, Debtor's counsel forwarded a letter to Chicago Title demanding turnover of the Debtor's property. (A true and correct copy of the August 24, 2015 Letter is attached hereto as **Exhibit "B."**) As of the filing of this Motion, Chicago Title has failed or refused to turnover the $330,000.00.

### III.
### RELIEF REQUESTED

21. Pursuant to this Motion, the Debtor respectfully requests that the Court enter an order requiring Chicago Title immediately turnover to the Debtor the $330,000.00 held in escrow.

## IV.
## AUTHORITY

22. The Deposit is a non-refundable deposit and is property of the Debtor's estate. *See Amended Bid Procedures Order*, ¶ 3 (a true and correct copy of the Amended Bid Procedures Order is attached as **Exhibit "C"**); *see also* 11 U.S.C. 541. Accordingly, pursuant to either Section 542 or Section 543[5], this Court is empowered to enter an order requiring Chicago Title to turnover the funds to the Debtor.

## V.
## REQUEST FOR EMERGENCY HEARING

23. The Debtor is in the process of evaluating its assets in preparation for filing an amended plan of reorganization and related disclosure statement. Resolution of this issue is necessary in order that the Debtor be able to properly identify those assets available to fund such plan. Accordingly, the Debtor requests that the Court consider this matter on an emergency basis, but in no event later than August 28, 2015.

## VI.
## PRAYER

24. WHEREFORE, Debtor respectfully requests that this Court enter an order (i) requiring Chicago Title to immediately turnover to the Debtor the $330,000.00 held in escrow, and (ii) grant the Debtor such other and further relief as this Court may deem just and proper.

[Remainder of page intentionally left blank.]

---

[5] The Debtor believes that Chicago Title may be a "custodian" as that term is defined under bankruptcy code § 101(11).

Respectfully submitted on the 25th day of August, 2015.

        Respectfully submitted,

        **OKIN & ADAMS LLP**

        By:    */s/ David L. Curry, Jr.*
        Christopher Adams
        Texas Bar No. 24009857
        David L. Curry, Jr.
        Texas Bar No. 24065107
        Email: dcurry@okinadams.com
        1113 Vine Street, Suite 201
        Houston, Texas 77002
        Tel. 713.228.4100
        Fax 888.865.2118

        **ATTORNEYS FOR DEBTOR**

## **CERTIFICATE OF ACCURACY PURSUANT TO LOCAL RULE 9013-1(I)**

I hereby certify to the accuracy of the matters set forth in the foregoing motion.

        /s/ *David L. Curry, Jr.*
        David L. Curry, Jr.

## **CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing pleading was forwarded via this Court's CM/ECF notification system to those parties registered for such service on August 25, 2015 and via email to:

Chicago Title Insurance Company
c/o Jason Hissong
10 South LaSalle St., Ste. 3100
Chicago, IL 60603
Tel. 312.223.5870
Facsimle: 312.223.3409
Email: jason.hissong@ctt.com

        */s/ David L. Curry, Jr.*
        David L. Curry, Jr.