United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 26, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 14-34974** |
| **CLEVELAND IMAGING & SURGICAL** | § | |
| **HOSPITAL, L.L.C.,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | **CHAPTER 11** |

<u>**MEMORANDUM OPINION**</u>

Dr. Camil Kreit, Dr. Samir Kreit, and Dr. Fadi Ghanem (the Doctors) challenge Christopher Quinn's standing in this case. Quinn was the Trustee of the Cleveland Imaging Litigation Trust established under Cleveland Imaging's bankruptcy plan. The Doctors also seek an accounting of the Trust from Quinn. The Trust terminated as a matter of law. Because there is no longer a Trust, Quinn no longer has standing to represent the interests of the Trust. Under the Court's residual powers, the Court orders Quinn to provide a final accounting.

The Doctors also seek to vacate multiple orders obtained by Quinn after the Trust terminated. The Court requires additional briefing on the status of those Orders. They are not vacated at this time.

**BACKGROUND**

Cleveland Imagining & Surgical Hospital, L.L.C.'s Third Amended Chapter 11 Plan of Liquidation established the CI Litigation Trust in 2016. (ECF No. 531 at 1, 25; *see also* ECF No. 567). The plan provided for the appointment of Christopher Quinn as Trustee of the CI Litigation Trust. (ECF No. ECF No. 531 at 25). The Trust was evidenced by a written Trust Agreement dated July 13, 2016. (*See* ECF No. 1110). The plan makes clear that the Trust was established to

liquidate Cleveland Imagining's assets.  (ECF No. 531 at 25).  The Trust Agreement provided for termination of the Trust not later than December 31, 2018:

> 5.15   Termination.  The Trust shall terminate upon the earliest to occur of: (a) the fulfillment of the Trust purpose by the prosecution or other resolution of all Causes of Action and the collection and disposition of the other Trust Assets, and the distribution of the proceeds thereof or (b) December 31, 2018.  The Trustee may apply to the Bankruptcy Court to terminate the Trust prior to December 31, 2018 in the event all activities of the Trust are completed.  The Trustee may, with the consent of the Bankruptcy Court, extend the term of the Trust if the conclusion of the Causes of Action transferred to the Trust pursuant to the Plan, the collection and disposition of the other Trust Assets and distribution of the proceeds therefrom has not been
>
> completed, or if other circumstances require such extension.  All fees earned by the Trustee up to and including the date of Termination shall be paid.

(ECF No. 1110 at 11).

Between the Trust's establishment and December 31, 2018, Quinn carried out his duties gathering and liquidating the Trust's assets.  After the December 31, 2018 termination date, Quinn continued to purportedly manage "the Trust's" assets and to represent the Trust's interests before the Court.  Quinn's continued representation led to the entry of several orders after December 31, 2018.  (*See generally* ECF No. 1111-4).

Eventually, the Doctors realized that the Trust was beyond its termination and filed the pending motion seeking Quinn's removal.  (*See* ECF No. 1102).  Through their motion, the Doctors also argue that any order sought by Quinn after the Trust's termination should be vacated as having been entered without the requisite standing.  (ECF No. 1102 at 4).  The  Doctors also seek an accounting of the Trust and Quinn's actions.  (ECF No. 1102 at 13).

Quinn responds that Texas trust law authorized his management of the Trust beyond December 31, 2018.  Specifically, Quinn argues that because the Trust Agreement did not provide a means to dissipate the Trust's assets upon the Trust's termination, Texas law required Quinn to continue managing those assets until none remained.  (ECF No. 1111 at 3–5).

## DISCUSSION

The parties' dispute revolves around the effect of the Trust Agreement's plain language on the Trust's existence.

### The Trust Agreement's Effect on the Trust

The Doctors argue that the determination of whether the Trust terminated on December 31, 2018 is governed by the Fifth Circuit's decision in *Goldin v. Bartholow,* 166 F.3d 710 (5th Cir. 1999). In an unrelated case, this Court addressed *Goldin's* effect on a trust that required further action to effect its termination. *See In re Black Elk Energy Offshore Operations, LLC*, No. 15-34287, 2020 WL 4940806, at *3 (Bankr. S.D. Tex. Aug. 21, 2020). Unlike the termination provision in the present case, the *Black Elk* termination provision provided:

> *The Trust shall be dissolved, in accordance with Section 8.02 hereof*, no later than the third anniversary of the Effective Date, unless the Bankruptcy Court, upon motion by the Trustee, Litigation Trust Committee, or any party in interest, within the three-month period prior to the third anniversary (or prior to the end of any extension period), determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets.

*Black Elk*, 2020 WL 4940806, at *3 (emphasis added).

Section 8.02 then specified how the trust's termination was to be effected:

> The Trustee shall be discharged, the Trust shall be dissolved, and the Litigation Trust Beneficial Interests shall be cancelled at such time as (i) the Trustee and Litigation Trust Committee determine that the administration of the Trust is not likely to yield sufficient additional proceeds to justify further pursuing such proceeds; and (ii) all Distributions required to be made by the Trustee under the Plan and this Agreement have been made. Without limiting any other provision of this Agreement regarding termination, the Trustee or any party in interest may apply to the Bankruptcy Court to terminate this Trust and the Trust may be terminated under such terms and conditions as the Bankruptcy Court may establish.

*Black Elk*, 2020 WL 4940806, at *3.

As explained below, *Goldin*, not *Black Elk*, controls the disposition of the Doctors' motion.

### The Trustee's Argument

Quinn initially filed a response to the Doctors' motion.  The Court struck the response finding that it was "a lengthy, angry diatribe rehashing issues long-since resolved."  (ECF No. 1107 at 1).  Indeed, the Fifth Circuit's controlling authority in *Goldin* was not even mentioned in the first 42 pages of the 49-page response.  The Court allowed Quinn to file an amended objection.

Quinn's response includes a detailed explanation of trust dissolution under Texas law.  It argues that 2006 amendments to the Texas Property Code effectively overruled *Goldin*, that the absence of a provision in the present Trust Agreement providing for the method of distributing assets on termination distinguishes this case from *Goldin*, and that the Court has no choice but to continue the dissolution process of the Trust.  These arguments are misplaced.

First, the 2006 amendments do nothing to further Quinn's position.  Rather, this argument fails to confront the threshold ruling in *Goldin*.   While *Goldin* recognized that trusts established under a plan are governed by state law, the amendments referenced by Quinn simply authorize the Court to create remedies when there is silence on a particular matter.  *See* TEX. PROP. CODE. ANN. § 111.035(b)(5) (West 2021). Here, however, the Trust is not silent.  The residual dissolution provisions of Texas trust law do not apply to trusts that express their purpose and provide a date by which that purpose must be fulfilled.  *See Goldin*, 166 F.3d at 717 ("[T]he instrument is not one which requires the insertion of the statutory default term.  It is a liquidating trust.  We find the imposition of further time for liquidation—winding-up—inconsistent with its terms.").  Under Texas law, such trusts are governed by the terms of their  trust agreements—not the statute.  *See id.* at 717 ("The trust's terms and express purpose foreclose any residual grant of powers to the trustee after its time had expired.  We conclude that Texas law does not provide for wind-up powers for this trust.").

4 / 10

The Fifth Circuit clarified this point in *Goldin*:

> The cases cited by Goldin invoking statutory wind-up power can be distinguished based on the nature of the trust instruments.  All of the Texas cases involved testamentary trusts which provide for immediate distribution upon a set termination date.  The process of distribution is not instantaneous, so when the obligation to distribute does not *begin* until termination, some residual power is clearly to be inferred.  Because the need for such a power is so obvious in these cases, the statutory provisions are generally noted as a limitation on the trustee . . . . With these types of instruments, the grant of winding-up power is merely a recognition of the powers necessary to effect distribution coupled with a restriction to a reasonable time.

> Here, the instrument is not one which requires the insertion of the statutory default term.  It is a liquidating trust.  *We find the imposition of further time for liquidation—winding-up—inconsistent with its terms.  It is specifically designed to effect liquidation and distribution as soon as practical, and termination expressly occurs on the earlier of substantial final distribution or a set date.*  There is thus not the inevitable period following termination when the administrative function of distribution is carried out that is found in the cases cited by Goldin.  Distribution is contemplated throughout, and the termination date provides the outer limit of the trustee's powers. The record indicates that the overwhelming bulk of the trust's initial assets were in fact distributed at the time of termination. Goldin's own pleadings admitted that the litigation against the directors and officers, and funds held pending resolution of the appellees' severance claims, in essence constituted the trust's sole remaining assets.

*Id.* at 716–17 (emphasis added).

Precisely as in *Goldin,* the termination provision in the Trust Agreement provides that the Trust would terminate on the earlier of the distribution of all assets or December 31, 2018. Allowing termination *after* a post-December 31, 2018 distribution of assets would be inconsistent with the *express* terms of the Trust.  The Trust Agreement's plain terms foreclose an application of Texas's statutory wind-up provisions.

Quinn next argues that *Goldin* is distinguishable because the trust agreement in *Goldin* provided that the residual assets were to be deposited with the Clerk of the Court or disposed of in another manner approved by the court.  *Id.* at 717.  This argument departs from the meaning of

*Goldin*.  Read fairly, the Fifth Circuit in *Goldin* viewed the trust's disposition provisions as "a mechanism to deal with the problem of illiquid assets." *Id.* at 717.  Nothing in *Goldin* indicates that the absence of such mechanisms necessitates an application of the statutory wind-up provision or an extension of the trust's term.

Quinn's argument that a December 31, 2018 termination would leave the assets in an unacceptable and unworkable state carries no weight.  That was an issue for the parties who established the Trust.  The deadline is an absolute one, and the expressed intent of the parties cannot be ignored.  *Cf. id.* at 717.

Although not referenced by the parties, another critical provision of the Trust Agreement highlights the flaws in Quinn's argument.  Section 5.15 provided Quinn with authority to request an early termination of the Trust.  But section 5.15 also allowed Quinn *to delay* the Trust's termination:

> *The Trustee may, with the consent of the Bankruptcy Court, extend the term of the Trust* if the conclusion of the Causes of Action transferred to the Trust pursuant to the Plan, the collection and disposition of the other Trust Assets and distribution of the proceeds therefrom has not been completed, or if other circumstances require such extension.

(ECF No. 1110 at 11 (emphasis added)).  Inexplicably, Quinn never sought an extension.

Put simply, the Trust Agreement itself afforded Quinn a mechanism to avoid the dire consequences Quinn now claims warrant equitable relief.  Yet Quinn is the one who failed to obtain an extension, and the Trust Agreement's terms preclude the Court from now granting such an extension on equitable grounds.  The Trust terminated by its own terms on December 31, 2018.

### The Termination's Effect on Existing Orders

The Court defers consideration of the viability of existing orders that were obtained after the Trust ended.  Standing is a necessary component of jurisdiction.  *Strubel v. Comenity Bank*,

842 F.3d 181, 187 (2d Cir. 2016).  As a jurisdictional issue, a standing deficiency may be raised at any time during the course of litigation.  *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (citing *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989)).  However, once an order becomes final, it may not collaterally attacked except under rare circumstances.  *See In re Grodsky*, 799 F. App'x 271, 274 (5th Cir. 2020) (per curiam) (citing *Maggio v. Zeitz*, 333 U.S. 56, 68 (1948)) (holding that attacks on final orders are barred by res judicata).

Rule 60(b) provides a mechanism to collaterally attack a final order in the rare circumstance that the final order is *void* .[1]  *See Norris v. Causey*, 869 F.3d 360, 365 (5th Cir. 2017) (noting that Rule 60(b)(4) may be used to attack a *void* judgment at any time); *see also Page v. Schweiker*, 786 F.2d 150, 154 (3d Cir. 1986) (recognizing that *void* judgments may be collaterally attacked).  But orders are considered void only when "premised either on a certain type of jurisdictional error or on a violation of due process."  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270–71 (2010).  A court's entry of an order where the court "lacked even an arguable basis for jurisdiction" is a "certain type of jurisdictional error" that would render an order void.  *Id.* at 271 (internal quotation marks omitted).

Standing is a constitutional requirement and an element of a court's subject matter jurisdiction.  *Page*, 786 F.2d at 153 ("[T]he Secretary correctly points out that the doctrine of standing is an aspect of the article III limitation of the federal judicial power to 'cases' and 'controversies.'  Thus, it goes to the subject matter jurisdiction of the district court and the validity of its judgment *ab initio*.").  Because of its constitutional implications, a lack of standing could

---

[1] While Rule 60(b)(4) references void "judgments," relief from void "orders" can also be granted under Rule 60(b)(4).  *See* Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies.").

potentially serve as a basis for attacking an order as void. *See Page*, 786 F.2d at 153–54 (recognizing that a final judgment may be collaterally attacked based on a lack of constitutional standing). However, once subject matter jurisdiction is finally determined, a judgment premised on that jurisdiction cannot be collaterally attacked. *See id.* at 154 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 292 n.57 (1947)) ("A void judgment remains void until such time jurisdiction is finally determined to exist, and, by virtue of the federal courts' 'jurisdiction to determine jurisdiction,' is elevated by its 'bootstraps' to the status of a valid judgment or litigation of the issue is precluded by the doctrine of *res judicata.*" (internal citations omitted)); *see also Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) ("After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact.").

The finality accorded to orders that evidence a court's *explicit or implicit* determination of jurisdiction is a function of the court's inherent authority to determine its jurisdiction. *See Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377 (1940) ("The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, *is res judicata in a collateral action.*" (emphasis added)); *see also Stoll*, 305 U.S. at 171–72 ("After a Federal court has decided the question of the jurisdiction[, tacitly or expressly,] over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact."). An order, rendered after a court implicitly or explicitly determined its jurisdiction, is no less final even where the order's jurisdictional basis was not challenged on direct appeal. *See* 20 CHARLES ALAN WRIGHT & MARY A. KANE, FED. PRAC. & PROC. DESKBOOK § 17 (2d ed. 2019) (citing *Underwriters Nat. Assur. Co. v. North Carolina Life and Acc.*, 455 U.S. 691 (1982)) ("The result of [*Chicot County*] appears to

be that a party who does not actually contest the jurisdiction will be bound by the judgment."). For the Doctors, this means that they may not collaterally attack the post-December 31, 2018 orders on grounds that the orders were issued in the absence of subject matter jurisdiction stemming from the Trustee's lack of standing.

In light of the foregoing, the Court will not vacate the post-December 31, 2018 orders without a demonstration that the orders are subject to collateral attack.

### Accounting

Texas law mandates that Quinn may be compelled to account for the activities of the Trust. TEX. PROP. CODE ANN. § 113.151 (West 2021).  However, it appears that part of section 113.151 is overridden by section 4.1 of the Trust Agreement.  Under section 4.1, "[t]he beneficial interests held by the Trust Beneficiaries hereunder shall not entitle any Trust Beneficiary . . . to require an accounting except as specially required by the terms hereof."  (ECF No. 1110 at 6).  However, section 6.7 of the Trust Agreement provides that the Court retains jurisdiction with respect to "such other and further matters relating to the Trust that are necessary and appropriate to effectuate the provisions of the Plan and protect the interests of all Creditors."  (ECF No. 1110 at 13).  Under section 113.151 of the Texas Property Code, a Court may order an accounting if "the effect of the administration of the trust on the beneficiary's interest is sufficient to require an accounting by the trustee."  TEX. PROP. CODE ANN. § 113.151(a).

Section 4.1 controls the Doctor's request.  The Doctors may not require an accounting, so relief under section 4.1 is denied.  However, Quinn has continued to act as if the Trust had not terminated.  This is a matter concerning the "administration of the trust" that is "sufficient to require an accounting by the trustee" under section 113.151.  PROP. § 113.151(a).  Under section 6.7 of the Trust Agreement, Quinn must account for all Trust receipts and expenditures.

## CONCLUSION

The CI Litigation Trust terminated, by its own terms, on December 31, 2018.  The Court does not decide today whether this termination affects orders subsequently obtained by Quinn.  A separate Order will be issued.

SIGNED 08/26/2021

_____
Marvin Isgur
United States Bankruptcy Judge