United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 07, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 14-34974 |
| CLEVELAND IMAGING & SURGICAL § | |
| HOSPITAL, L.L.C., § | |
| § | |
| Debtor. § | |
| § | |
| § | CHAPTER 11 |

## MEMORANDUM OPINION FINDING SANCTIONS ARE WARRANTED

The Court is loath to impose sanctions against attorneys or their clients. But when their conduct is severe and unremitting, the Court is left with no choice. In this case, Dr. Camil Kreit, Dr. Samir Kriet, and their attorney Azhar Chaudhary filed a motion seeking relief that cannot be granted. The motion contains scurrilous allegations against opposing counsel, members of our community, and a major financial institution. When the Movants' sanctions motions were filed, the Doctors and Mr. Chaudhary initially failed to respond. Rather than imposing the unopposed sanctions, the Court *sua sponte* (i) required that the sanctions motions be reformed and refiled; and (ii) gave an extended period of time for the Doctors and Mr. Chaudhary to withdraw their wrongful conduct. (ECF No. 1149 at 1).

Rather than retreat, the Doctors and Mr. Chaudhary attempted to justify their wrongful conduct. Their failure to recognize the wrongfulness of their conduct is a continuation of years of poor judgment and warrantless litigation.

### BACKGROUND

In August 2021, more than five years after the Court confirmed Cleveland Imaging's Chapter 11 Plan, the Doctors moved to vacate the order authorizing the sale of Cleveland Imaging's assets and the Court's confirmation of Cleveland Imaging's Plan. (ECF Nos. 355,

567).[1]  The Doctors allege these orders were procured through a "massive fraud" on the Court. (*See generally* ECF Nos. 1112, 1113, 1136, 1137). The Doctors' motion was signed by their lawyer, Azhar Chaudhary. CISH Acquisition, LLC, Okin Adams LLP, and The Claro Group (the "Movants") responded to the Doctors' vacatur motion with motions for sanctions under Bankruptcy Rule 9011.[2]  (ECF Nos. 1152, 1153, 1154). In sum, the Rule 9011 motions contend that: (1) the Court's prior rulings foreclose the Doctors' request for vacatur; (2) the Doctors' request is barred by 11 U.S.C. § 1144; and (3) the Doctors' allegations lack evidentiary support. The Court explicitly afforded Mr. Chaudhary an opportunity to withdraw the vacatur motion. (ECF Nos. 1121 at 2; 1149 at 1). The vacatur motion violates Rule 9011 and was not withdrawn following the Movants' compliance with Rule 9011's safe-harbor provision. *See* FED. R. BANKR. P. 9011(c)(1)(A); (ECF Nos. 1152-1, 1153-1, 1154-1). Sanctions are therefore appropriate.

The Doctors allege that Ravi Moparty and Rafael Delaflor, former directors of Cleveland Imaging, with the aid of the Debtor's and Acquisition's professionals, perpetrated a "massive fraud" on the Court. (ECF No. 1137 at 3–4). This "massive fraud" was allegedly used to unnecessarily place Cleveland Imaging into chapter 11 bankruptcy so that the Bankruptcy Court would approve a sale of Cleveland Imaging's assets to insiders at a substantially reduced purchase price. (ECF No. 1137 at 22–36, 38–49). According to the Doctors, the perpetrators carried out their objectives through three overarching frauds. (ECF No. 1137 at 6–7, 38–40, 43–44). First, the Doctors allege that Moparty and Delaflor, with assistance from Iberia Bank (the holder of a note secured by substantially all Cleveland Imaging's assets), orchestrated the unnecessary appointment of a receiver (also allegedly in Moparty's and Delaflor's pocket), who eventually

---

[1] Judge Jeff Bohm oversaw Cleveland Imaging's bankruptcy until his retirement in 2019.

[2] For the purpose of this motion, Bankruptcy Rule 9011 is the same as Federal Rule of Civil Procedure 11. *See generally* FED. R. BANKR. P. 9011.

placed Cleveland Imaging into bankruptcy. (*See* ECF No. 1137 at 10). Second, Moparty and Delaflor, with the aid of Kell Mercer (Acquisition's attorney), allegedly conducted a "sham" transaction through which Acquisition (which was owned by Moparty and Delaflor) made it appear as though it purchased the Iberia Bank Note. (*See* ECF No. 1137 at 29). Acquisition then used that Note (despite Acquisition allegedly not having the right to do so) to purchase Cleveland Imaging's assets through a credit bid. (*See* ECF No. 1137 at 29–32). Finally, the Doctors allege that Cleveland Imaging, through its counsel Okin Adams and at the direction of Moparty and Delaflor, fabricated a large unsecured claim purportedly held by Aetna to secure confirmation of Cleveland Imaging's plan. (*See* ECF No. 1137 at 40–43). Along their road to perdition, the Doctors accuse almost every party and professional involved in this case of fraudulent conduct aimed at securing what was, essentially, Court-sanctioned theft.

Over the past seven years, the Doctors, through a revolving door of attorneys, have lodged these claims and accusations numerous times. This Court has almost invariably rejected the Doctors' accusations. And, on more than one occasion, the Court sanctioned the Doctors and their lawyers for their unrelenting attempts to litigate matters long-settled based on accusations long-since rejected. (*See* ECF Nos. 554, 555, 604, 605, 758, 768, 818, 833).

Undeterred by this Court's uniform rejection of their claims, the Doctors repeatedly exercised their right to appeal from this Court's judgments. But like this Court's record, the appellate records reflect the Doctors have traveled a path of meritless litigation. These are the Doctors' appeals:

|  | **Appeal Filed In** | **Date Filed** | **Appellate Case Number** | **Result of Appeal** |
|---|---|---|---|---|
| 1 | United States District Court for the Southern District of Texas | July 19, 2016 | 16-2135 | Appeal dismissed. |

|   | **Appeal Filed In** | **Date Filed** | **Appellate Case Number** | **Result of Appeal** |
|---|---|---|---|---|
| 2 | United States Court of Appeals for the Fifth Circuit | November 9, 2016 | 16-20744 | Dismissal affirmed |
| 3 | United States Supreme Court | September 19, 2017 | 17-733 | Certiorari denied. |
| 4 | United States District Court for the Southern District of Texas | August 16, 2019 | 19-3069 | Affirmed sanctions for past conduct. Vacated sanctions for future conduct. |
| 5 | United States Court of Appeals for the Fifth Circuit | February 2, 2021 | 21-20067 | Affirmed. Petition for rehearing pending. |
| 6 | United States District Court for the Southern District of Texas | April 24, 2020 | 20-1456 | Appeal dismissed. |
| 7 | United States District Court for the Southern District of Texas | September 1, 2020 | 20-3060 | Appeal dismissed. |
| 8 | United States Court of Appeals for the Fifth Circuit | December 3, 2020 | 20-20637 | Appeal dismissed. |
| 9 | United States District Court for the Southern District of Texas | December 2, 2020 | 20-4095 | Appeal dismissed. |
| 10 | United States District Court for the Southern District of Texas | December 4, 2020 | 20-4134 | Motion for leave to appeal as pauper denied. |
| 11 | United States Court of Appeals for the Fifth Circuit | January 13, 2021 | 21-20026 | Appeal dismissed. |

|    | Appeal Filed In | Date Filed | Appellate Case Number | Result of Appeal |
|----|---|---|---|---|
| 12 | United States District Court for the Southern District of Texas | February 8, 2021 | 21-0423 | Appeal dismissed. |
| 13 | United States District Court for the Southern District of Texas | March 23, 2021 | 21-0935 | Appeal dismissed. |
| 14 | United States Court of Appeals for the Fifth Circuit | May 6, 2021 | 21-20252 | Appeal dismissed. |

It is time for this litigation to end.

### DISCUSSION

The Doctors' allegations are extremely serious. So too are the Movants' allegations that the Doctors and Mr. Chaudhary violated Rule 9011. Relevant here, Rule 9011 obligates attorneys and parties to ensure that a motion or pleading:

> (2) [contains] claims, defenses, and other legal contentions [that] are *warranted by existing law or by a nonfrivolous argument for the extension*, modification, or reversal *of existing law* or the establishment of new law; [and]
>
> (3) the allegations and other factual contentions *have evidentiary support or, if specifically so identified, are likely to have evidentiary support* after a reasonable opportunity for further investigation or discovery.

FED. R. BANKR. P. 9011(b)(2), (3) (emphasis added). Violating Rule 9011 could subject Mr. Chaudhary and the Doctors to sanctions. FED. R. BANKR. P. 9011(c).

Under Rule 9011, the conduct of a signatory to a pleading or motion is assessed objectively. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016). A signatory violates Rule 9011(b)(2) by advancing claims or arguments lacking support in existing law, and for which no *reasonable* justification for extension of existing law is offered. *Collins v. Daniels*, 916 F.3d

1302, 1320 (10th Cir. 2019); *see also M2 Tech., Inc. v. M2 Software, Inc.*, 748 F. App'x 588, 590 (5th Cir. 2018) (affirming the imposition of sanctions on an attorney that presented claims unsupported by existing law or nonfrivolous argument for the law's extension). In the Rule 9011 context, claims barred by res judicata are generally claims that lack support in existing law. *See Fermin v. Nat'l Home Life Assurance Co.*, 15 F.3d 180 (5th Cir. 1994) (affirming the imposition of Rule 11 sanctions on a pro se litigant for advancing claims barred by res judicata); *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 767 (8th Cir. 2012) ("Because res judicata law was well-settled under the circumstances, and a reasonable inquiry into the lawsuit's basis showed res judicata barred the action, we concluded sanctions should have been imposed." (internal quotation marks omitted)). These strictures pose serious problems for Mr. Chaudhary.

The Doctors request vacatur of the Court's order confirming Cleveland Imaging's Plan of Reorganization. (*See* ECF No. 1137 at 2). On June 29, 2016, the Bankruptcy Court confirmed Cleveland Imaging's Liquidating Chapter 11 Plan. Under § 1144 of the Bankruptcy Code, the order confirming the Plan could not be revoked except for fraud. 11 U.S.C. § 1144 (2020). Even if fraud occurred, revocation must be sought within 180 days. *Id.* The Doctors' motion seeks revocation of the Confirmation Order based on fraud. It was originally filed on August 17, 2021. (ECF No. 1112). That filing missed the 180-day deadline by 1,695 days.

Regardless of the alleged validity of the Doctors' allegations, existing law does not authorize the relief the Doctors seek. The Doctors argue that Rule 60(d)(3) affords the Court power to vacate the Confirmation Order. (ECF No. 1137 at 14). Rule 60(d)(3) provides that Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d)(3). Rule 60 applies in civil cases. It is incorporated into adversary proceedings by Bankruptcy Rule 9024. FED. R. BANKR. P. 9024. Rule 9024's incorporation of Rule 60 explicitly

precludes the use of Rule 60 in derogation of the time limits imposed by 11 U.S.C. § 1144. Fed. R. Bankr. P. 9024. Specifically, under Rule 9024, Rule 60 may only be used to "revoke an order confirming a plan . . . within the time allowed by § 1144." Fed. R. Bankr. P. 9024.

Section 1144's 180-day deadline for revocation of a confirmation order procured by fraud is strictly enforced. *See In re Apex Long Term Acute Care - Katy, L.P.*, 599 B.R. 314, 322 (Bankr. S.D. Tex. 2019) (citing *In re Newport Harbor Assocs.*, 589 F.2d 20, 24 (1st Cir. 1978)) ("[Section] 1144 precludes [the] reopening [of] the case pursuant to Fed. R. Civ. P. 60(b) and Fed. Bankr. R. 9024."). The Doctors' position requires interpreting Rule 60(d) to override § 1144. That position is expressly foreclosed by the text of Rule 9024, the Rules Enabling Act, 28 U.S.C. § 2072, and Supreme Court precedent, *United States v. Sherwood*, 312 U.S. 584, 589–90 (1941) ("[The Enabling Act] gave [this Court] no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish the jurisdiction of federal courts.").[3] By arguing that Rule 60(d)(3) provides an independent basis to revoke the Confirmation Order, the Doctors' motion, signed by Mr. Chaudhary, contains legal contentions not warranted by existing law or by nonfrivolous arguments for a change in the law. Fed. R. Bankr. P. 9011(b)(2).

The Doctors cannot identify a legally-valid mechanism for vacating the Confirmation Order. Remaining is the Doctors' request for vacatur of the order authorizing the sale of Cleveland Imaging's assets to Acquisition. This request also runs afoul Rule 9011(b)(2)'s strictures because it is based on claims previously rejected by the Court.

---

[3] The Doctors rely on *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), in asserting their entitlement to relief under Rule 60(d)(3). That case explained that Rule 60(d)(3) embodies courts' inherent power to vacate orders procured by fraud because such orders "never become final." 11 Mary K. Kane, Federal Practice & Procedure § 2870 (3d ed. 2021) (discussing *Hazel-Atlas*, 322 U.S. at 245–51). But Rule 60(d)(3) is simply a recognition that a court's inherent power to vacate fraudulently procured orders is not subject to "procedural limitations." *Id.* Section 1144 is not a procedural limitation. It substantively curtails a court's ability to revoke a confirmation order based on fraud. 11 U.S.C. § 1144. The Doctors' argument that Rule 60(d)(3) preempts § 1144 is exactly the type of argument foreclosed by the Rules Enabling Act. *See* 28 U.S.C. § 2072(b).

The Doctors' vacatur motion begins with the foreboding disclaimer that "over the course of the instant bankruptcy proceedings, some of the allegations in this motion have been previously brought to the attention of the Court in a rather disjointed effort." (ECF No. 1137 at 4). That is an understatement. The Doctors have previously presented two of the three alleged overarching frauds—fraud in the receiver's appointment (and the ensuing bankruptcy) and fraud in the asset sale—as bases for relief from the Sale Order. Yet the Doctors fail to justify their disregard for the Court's prior rejection of these claims. *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *United States v. Beggerly*, 524 U.S. 38, 45–46 (1998)) (requiring a "well-pled independent action in equity" to overcome res judicata).

Throughout this case, the Doctors have alleged impropriety in the filing of Cleveland Imaging's bankruptcy. (*See, e.g.,* ECF Nos. 127 at 2–3; 742 at 8–9, 13; 830 at 1–3; 16–22; 853 at 4–7; 910 at 3–15; 949 at 3). The Court has unequivocally rejected this accusation. (*See, e.g.,* ECF Nos. 789 at 18:4–19:20; 833 at 1; 913 at 1; 930 at 1–3; 959 at 1). Here, the Doctors attempt to subvert the prior rejection of these accusations by asserting the infirmity of Cleveland Imaging's bankruptcy filing is evidenced by documents submitted to the Court that overstated Cleveland Imaging's liabilities and understated its assets. (ECF No. 1137 at 11–12, 22, 37). The Court's prior ruling, that the Doctors slept on their rights, forecloses the Doctors' reliance on alleged impropriety underlying Cleveland Imaging's bankruptcy filing as a basis for vacatur of the Sale Order. (*See* ECF No. 789 at 18:4–19:20). As Judge Bohm put it, the Doctors had an opportunity to "file a motion to dismiss, or challenge the authority of Mr. Brickley, and they never did. . . . Dr. Kreit wants to have his cake and eat it too when he wasn't happy with the way the sale went." (ECF No. 789 at 19:2–10). Because the Court has already dismissed the Doctors' allegations of impropriety in Cleveland Imaging's chapter 11 filing, re-urging the allegations as a basis for relief

from the Sale Order violates Rule 9011(b)(2). *Cf. Fermin*, 15 F.3d 180 ("The district court's opinion more than adequately addressed and disposed of these issues. [Plaintiff's] appeal in the face of that opinion is frivolous.").[4]

Even more tired than the allegations of impropriety underlying Cleveland Imaging's bankruptcy filing are the allegations of impropriety in the sale of Cleveland Imaging's assets. (*See, e.g.,* ECF Nos. 271 at 23:15–25:13; 278 at 9–10; 351 at 7–9; 742 at 11). The Doctors re-urge these claims notwithstanding their prior, unequivocal rejection and the vast record demonstrating that the sale process was competitive and legitimate. (*See* ECF Nos. 372 at 3:23–8:21; 789 at 18:4–19:20; 930 at 1–3; 959 at 1). Attempting put a fresh façade on these tired claims, the Doctors pin this "fraud," through which the sale was allegedly procured, on Acquisition's lawyer, Kell Mercer. (*See* ECF No. 1137 at 23–24). The Doctors draw this conclusion from a 2017 Texas state court judgment involving the transfer of the Iberia Bank Note that Acquisition used to credit bid on Cleveland Imaging's assets. (*See* ECF No. 1137 at 26). According to the Doctors, the 2017 judgment proves that Mr. Mercer "knew, or should have known" that the transfer of the Iberia Note was a "sham," and that Acquisition did not possess a right to credit bid on Cleveland Imaging's assets. (ECF No. 1137 at 29). In reality, the state court only ruled on a jurisdictional issue and on a "no-evidence" motion for summary judgment. (ECF Nos. 1113-20, 1147-63). The Doctors maintain that because Mr. Mercer knew of this "sham," his failure to disclose it was a

---

[4] Additionally, a discrepancy between Cleveland Imaging's true liquidity and the liquidity evidenced by Cleveland Imaging's schedules, regardless of the source of that discrepancy, would not "subvert the integrity of the court itself." *See* 11 MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2870 (3d ed. 2021); *see also Curtis v. Brunsting*, 860 F. App'x 332, 336 (5th Cir. 2021) ("Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court." (internal quotation marks omitted)). The appropriate vehicle for identifying the source of a discrepancy, and any wrongful conduct perpetuating that discrepancy, is instead a timely motion to dismiss the bankruptcy case or a timely Rule 60(b) motion. (*See* ECF No. 789 at 25:4–28:15). It is not a well-worn collateral attack that would detonate a bankruptcy that was settled six years ago.

fraud on the court. (ECF No. 1137 at 35–37). This "new" argument is meritless.[5] The Doctors' and Mr. Chaudhary's decision to press these claims again, in the face of this Court's previous rejection, violates Rule 9011(b)(2). *Cf. Fermin*, 15 F.3d 180 ("The district court's opinion more than adequately addressed and disposed of these issues. [Plaintiff's] appeal in the face of that opinion is frivolous.").

Finally, the Movants charge the Doctors with violating Rule 9011(b)(3). Under Rule 9011(b)(3), Mr. Chaudhary's signature on the Doctors' motion affirmed that Mr. Chaudhary conducted an objectively reasonable investigation into the factual allegations presented to the Court. *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994). That is, Rule 9011(b)(3) required Mr. Chaudhary to satisfy himself, on an objective basis, that the Doctors' claims for vacatur were "well-grounded in fact." *Id.*

The Movants contend many allegations in the Doctors' motion lack an objective basis in fact. (*See generally* ECF Nos. 1152, 1153, 1154). Most egregious are the Doctors' allegations that: (1) Mr. Brickley engaged in, or at least facilitated, fraudulent conduct while acting as Cleveland Imaging's receiver, (ECF No. 1153 at 13); (2) Cleveland Imaging's bankruptcy was a "sham" that Moparty and Delaflor used to purchase Cleveland Imaging's assets and cover up their

---

[5] Glaringly, the Doctors cite *no* legal authority for the proposition that, in 2015, Mr. Mercer perpetrated a fraud on the Court because he failed to affirmatively disclose the implications of a 2017 Texas state court decision. *Contra Omari v. Gonzales*, 419 F.3d 303, 307 (5th Cir. 2005) (quoting *Fraud*, BLACK'S LAW DICTIONARY (11th ed. 2019)) (explaining that "fraud" is commonly understood as referring to a "knowing misrepresentation of the truth or concealment of a material fact"). The Doctors also misunderstand (or perhaps misrepresent) the Texas state court's 2017 decision. The Doctors claim the state court judgment conclusively determined that Iberia Bank was unsuccessful in transferring the Note secured by Cleveland Imaging's assets to Acquisition. (ECF No. 1137 at 27–28). The state court orders and judgment on which the Doctors rely are devoid of any rationale underlying the state court's ruling. (ECF No. 1113-20 at 1–4). Moreover, a review of the petition filed in state court reveals that the validity of transfer between Iberia Bank and Acquisition was *not at issue* in that action. (*See generally* ECF No. 1147-63). Nothing in the state court's ruling suggests that it considered whether Acquisition's rights in the Note permitted Acquisition to submit a valid credit bid for Cleveland Imaging's assets. Even if the Doctors could, legally, collaterally attack the Sale Order based on the findings another court made two years after the Sale Order's entry (another proposition for which the Doctors offer no legal authority), the state court's ruling had nothing to do with the validity of Acquisition's use of the Note to credit bid on Cleveland Imaging's assets.

wrongful conduct, (ECF No. 1154 at 9–11); (3) Mr. Mercer knew Acquisition lacked the right to use the Note to purchase Cleveland Imaging's assets and failed to disclose that fact to the Court, (ECF No. 1153 at 14); (4) Iberia Bank colluded with the Moparty and Delaflor to have a receiver appointed and place Cleveland Imaging into a sham bankruptcy, (ECF No. 1154 at 5; *see also* ECF No. 1137 at 12 n.3); and (5) Moparty and Delaflor, through Mr. Brickley, misrepresented Aetna's claim against Cleveland Imaging to secure confirmation of the plan, (ECF No. 1154 at 6). These allegations are either directly contrary to established facts or lack any prospect of accompanying evidentiary support. *See* FED. R. BANKR. P. 9011(b)(3).

There is no evidence that Mr. Brickley lied to the Court, the Doctors simply disagree with his decisions as Cleveland Imaging's receiver. (*See* ECF No. 789 at 8:6–25). Like their claims against Mr. Brickley, the Doctors' charge that the bankruptcy was a sham is simply a product of their displeasure with the bankruptcy's outcome. (*See* ECF No. 789 at 18:4–19:6). The Doctors claim Mr. Mercer lied to this Court because a Texas state court determined he lied about Acquisition's rights under the Iberia Bank Note; the Texas court made no such determination and that court's findings regarding the Note are not contrary to Mr. Mercer's representations to this Court. *See supra* note 5. Next, after seven years, there is no evidence even suggesting Iberia Bank colluded with Moparty and Delaflor in an effort to deceive this Court or Cleveland Imaging's creditors. Finally, a cursory review of the record reveals the patent falsity of the allegation that Aetna's claim against Cleveland Imaging was manufactured to secure confirmation of the Plan. (*See* Claim 47-1 at 1–2, 27–32); *see also In re Nair*, 320 B.R. 119, 128–29 (Bankr. S.D. Tex. 2004), *subsequently aff'd*, 202 F. App'x 765 (5th Cir. 2006) (imposing sanctions on a party for making allegations contrary to facts previously established in the case).[6]

---

[6] The subsequent Aetna agreed judgment, entered in 2019, has no effect on the fact that, as of the Plan's confirmation in 2016, Aetna held a judgment against Cleveland Imaging for over $8 million. (*Compare* Claim 47-1

Mr. Chaudhary entered this case seven years after its inception, and after Cleveland Imaging, Acquisition, and Mr. Chaudhary's predecessors exchanged significant discovery. (ECF No. 401 at 18:7–19:7). At this stage, Mr. Chaudhary had everything he needed to determine that certain claims in the Doctors' motion lacked any prospect of evidentiary support. FED. R. BANKR. P. 9011(b)(3). It was unreasonable for Mr. Chaudhary to include these allegations in the Doctors' motion in light of the extensive record in this case. *Childs*, 29 F.3d at 1026 (imposing Rule 11 sanctions after considering the time available for the signatory to investigate the facts alleged, the feasibility of conducting a complete investigation, and the extent to which the facts alleged were previously developed through discovery). Furthermore, Mr. Chaudhary's choice to advance the Doctors' allegations that other lawyers committed fraud drastically escalates the seriousness of the Rule 9011 violation. To subscribe to such accusations without a factual or legal basis fundamentally disregards the requirements of Rule 9011.

Notwithstanding the obvious requirement that the Court impose sanctions, *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 876–77 (5th Cir. 1988), the Court still hopes to minimize the required sanctions. A hearing will be conducted on April 15, 2022 at 9:30 AM. The Doctors and Mr. Chaudhary are urged to begin ameliorating the damage they caused. It is too late to avoid the imposition of sanctions; it is not too late to minimize them. *See id.* at 878 (discussing courts' broad discretion to tailor sanctions to the specific violation of Rule 11).

Amelioration could take many forms. An apology to the parties wrongfully accused of fraud. A withdrawal of the allegations. An assurance that this litigation is over. Many things would begin to correct this misconduct. If appropriate amelioration is undertaken, the Court hopes to limit the sanctions to an award of attorneys' fees and a prohibition on future misconduct. But

---

at 27-32, *with* Dist Ct. Case No. 12-02451, ECF No. 292 at 1–2). Moreover, no party objected to Aetna's exercise of its rights as a claimant against Cleveland Imaging's estate.

if the Doctors and Mr. Chaudhary do not come to terms with their conduct (and the fact that this litigation is *over*), more substantial sanctions may be warranted.

## CONCLUSION

Drs. Camil and Samir Kreit persist in their attempts to relitigate and dislodge rulings this Court made years ago. Mr. Chaudhary facilitated the Doctors' disregard for this Court's prior rulings. They must each bear the consequences of their actions. Rule 9011 sanctions are mandated. A separate order imposing those sanctions will be issued.

SIGNED 03/07/2022

_____
Marvin Isgur
United States Bankruptcy Judge